# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>MOISES MARTIN-LARA,<br><br>    Defendant. | No. 3:20-cr-00080-SLG-DMS<br><br>**REPORT AND RECOMMENDATION[1] TO DENY DEFENSE MOTION TO SUPPRESS AND FOR *FRANKS* HEARING**<br>**[Dkt. 82]** |

## I. INTRODUCTION

Defendant Moises Martin-Lara filed a motion to suppress evidence obtained from the search of three parcels and the search of his residence (Dkt. 82-4). Regarding the search of his residence (search warrant 3:20-MJ-000451-MMS), Martin-Lara asserts that the affidavit in the search warrant application recklessly or intentionally omitted vital information that, if included, would demonstrate that law enforcement did not have probable cause to search the residence (Dkt. 82-4 at 4-10). Martin-Lara requested that the Court hold a *Franks* hearing so he could demonstrate through police reports, law enforcement officers' testimony, and other evidence that such omissions were intentional and/or reckless. Martin-Lara also challenges the search warrants of three parcels sent through the U.S. Postal Service.

---

[1] This report and recommendation is being issued as a final report and recommendation. Pursuant to Fed. R. Crim. P. 59(b)(3), any objections will be considered by the District Court Judge who will accept, reject, or modify the recommendation, or resubmit the matter to the Magistrate Judge for additional consideration and recommendations.

For the following reasons, the Court recommends that the District Court **DENY** the defendant's motion to suppress and motion for a *Franks* hearing.

## II. STATEMENT OF FACTS

### A. Intercept and Search of the Three Parcels

On April 21, 2020, the U.S. Postal Service intercepted and detained a parcel shipped from Anchorage, Alaska to Tucson, Arizona (Dkt. 92 at 3). The sender was listed as "Lamuri Iury, 909 Chugach way spc. 36 Anchorage" and the recipient was listed as "Rafa Bray 10250 S Suncrest Dr Tucson AZ 85756" (Dkt. 92 at 3-4). Upon noticing "several suspicious qualities," the parcel was removed from circulation and routed to a U.S. postal inspector (Dkt. 92 at 3). The parcel was presented to a K-9 unit and the K-9 indicated that she detected the odor of controlled substances on or emanating from the parcel (Dkt. 92 at 4). The postal inspector then applied for a warrant to search its contents; search warrant 3:20-MJ-00209-DMS was executed (Dkt. 92 at 4). Inside the parcel was $28,000 in cash (Dkt. 92 at 4).

On September 8, 2020, the U.S. Postal Service intercepted and detained a parcel shipped from Tucson, Arizona to Anchorage, Alaska (Dkt. 92 at 4). The sender was listed as "Abel Flores 626 W Callee Santa Maria Tucson AZ 85706" and the recipient was listed as "Tim Smith 6600 Weimer dr apt 6 anchorage Alaska 99502" (Dkt. 92 at 5). Upon noticing "several suspicious qualities," the parcel was removed from circulation and routed to a U.S. Postal Inspector (Dkt. 92 at 4). The parcel was presented to a K-9 unit and the K-9 indicated that she detected the odor of controlled substances on or emanating from the parcel (Dkt. 92 at 5). The postal inspector then applied for a warrant to search its contents; search warrant 3:20-MJ-00447-MMS was executed (Dkt. 92 at 5). Inside the parcel was one pound and five ounces of blue pills suspected of containing the opioid derivative fentanyl (Dkt. 92 at 5).

On September 18, 2020, the U.S. Postal Service intercepted and detained a parcel shipped from San Juan, Puerto Rico to Anchorage, Alaska (Dkt. 92 at 6). The sender was listed as "Anthony Carrion 147 Calle de San Jose, San Juan, PR 00901" and the recipient was listed as "Jonathan Kendricks 1020 pine st. Unit A, anchorage, Alaska 99508" (Dkt. 92 at 6). Upon noticing "several suspicious qualities," the parcel was removed from circulation and routed to a U.S. Postal Inspector (Dkt. 92 at 6). The parcel was presented to a K-9 unit and the K-9 indicated that she detected the odor of controlled substances on or emanating from the parcel (Dkt. 92 at 7). The postal inspector then applied for a warrant to search its contents; search warrant 3:20-MJ-00475-MMS was executed (Dkt. 92 at 7). Inside the parcel was two pounds and three ounces of a white substance suspected as cocaine (Dkt. 92 at 7).

### B. Controlled Delivery of the Parcel

After discovering one pound and five ounces of blue pills suspected of containing the opioid derivative fentanyl in a parcel addressed to "Tim Smith 6600 Weimer dr apt 6 anchorage Alaska 99502," law enforcement obtained beeper order 3:20-JM-00450-DMS, which permitted the insertion of three monitoring devices into the parcel (Dkt. 96 *SEALED* at 2). The devices could indicate when the outer packaging was opened, when the inner packaging was opened, and the GPS location of the parcel (Dkt. 92 at 7). Law enforcement replaced the original pills in the parcel with "sham products" (Dkt. 96 *SEALED* at 2).

On September 9, 2020 law enforcement conducted a controlled delivery of the parcel to 6600 Weimer Dr. Apt. 6 (Dkt. 92 at 7). Adera Leonard accepted the parcel (not "Tim Smith") (Dkt. 92 at 7). Law enforcement then observed Leonard drive away with a purse large enough to contain the parcel (Dkt. 92 at 7-8). She drove to 5511 Windflower and after briefly accessing the driver's side of a black pickup truck, she entered Unit A with the purse (Dkt. 92 at 8; Dkt. 96

*SEALED* at 2). Three minutes later, law enforcement observed a white Ford Fusion arrive at 5511 Windflower and a man later identified as Kenyon Jackson get out of the vehicle and enter Apartment A (Dkt. 92 at 8; Dkt. 96 *SEALED* at 3). Shortly after, law enforcement observed Jackson exit the residence with another man later identified as Martin-Lara (Dkt. 96 *SEALED* at 3). The men entered the Ford Fusion (Dkt. 92 at 8).

At approximately 1:42 PM, a monitoring device in the parcel indicated that the parcel had been opened (Dkt. 96 *SEALED* at 3). The Ford, driven by Jackson and with Martin-Lara in the passenger's seat, backed out of the driveway and headed northbound on Windflower Circle (Dkt. 96 *SEALED* at 3). The Ford was then surrounded by law enforcement (Dkt. 96 *SEALED* at 3). Law enforcement reported that "the Subject Parcel had been thrown out the passenger side window and was observed on the ground next to the vehicle" (Dkt. 96 *SEALED* at 3). Law enforcement found the outer packaging inside 5511 Windflower Unit A when they performed a safety sweep (Dkt. 92 at 8).

Martin-Lara was advised of his *Miranda* rights and consented to talk with law enforcement outside the presence of an attorney (Dkt. 96 *SEALED* at 4). The defense asserts that Martin-Lara was then "taken back to his 5511 Windflower Circle [residence] where he was interrogated in the garage" (Dkt. 82-4 at 7). Law enforcement reports that during an on-scene interview Martin-Lara confessed that 5511 Windflower Unit A was his residence and that there were "5 grams of heroin inside his house" (Dkt. 92 at 8; Dkt. 96 *SEALED* at 5).

C. **Warrant Search of Windflower Unit A**

On September 9, 2020, after the controlled delivery, U.S. Postal Inspector Kevin Horne applied for a search warrant to search 5511 Windflower Unit A, as well as two vehicles on the premises (3:20-MJ-00451-MMS Dkt. 1).

Horne provided an affidavit in support of the warrant application reciting probable cause to believe the residence contained evidence of drug offenses under 21 U.S.C. § 846, 841, 843(b), and 18 U.S.C. § 1956. The affidavit detailed the interception of the parcel, the parcel search warrant, and the discovery of one pound and five ounces of blue pills suspected of containing the opioid derivative fentanyl (3:20-MJ-00451-MMS Dkt 1 at 9-10). The affidavit then described the method of controlled delivery, including replacing the pills with sham product and inserting several monitoring devices into its packaging (3:20-MJ-00451-MMS Dkt 1 at 10).

Next, the affidavit describes the events of the controlled delivery; that Leonard received the parcel, then left with a purse, drove to 5511 Windflower, entered Unit A with the purse, that a Ford Fusion arrived shortly thereafter, the driver entered Unit A and returned to the Ford, then the device indicated that the parcel "had already been opened" (3:20-MJ-00451-MMS Dkt 1 at 11-12). The affidavit states that the inner packaging with the GPS device and sham product was found outside the Ford and the two men inside the vehicle, Jackson and Martin-Lara, were detained (3:20-MJ-00451-MMS Dkt 1 at 12). It states that "[w]hile conducting a safety sweep of the residences of '5511 Windflower Unit A Anchorage Alaska', Troopers and Agents located the exterior of the Subject Parcel open. In plain view, agents observed 198US [sic] Currency, additional postal parcels, and a money counter inside the residence" (3:20-MJ-00451-MMS Dkt 1 at 12).

The affidavit states that during an on-scene interview, Martin-Lara admitted that he lives at 5511 Windflower Unit A and that there was 5 grams of heroin inside (3:20-MJ-00451-MMS Dkt 1 at 12).

//

//

# III. APPLICABLE LAW

## A. Standing to Challenge a Search Warrant

"[C]apacity to claim the protection of the Fourth Amendment depends upon whether the person . . . claim[ing] protection . . . has a legitimate expectation of privacy in the invaded place. A subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as reasonable" *Minnesota v. Olson*, 495 U.S. 91, 95–96 (1990) (internal citations omitted). A person normally has a justified expectation of privacy in their residence. *See id*.

The Fourth Amendment requires probable cause to search a sealed parcel sent through the mail. *United States v. Jacobsen*, 466 U.S. 109, 114 (1984).

> Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy; warrantless searches of such effects are presumptively unreasonable. Even when government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package.

*Id.*

"It has long been established that an addressee has both a possessory and a privacy interest in a mailed package." *United States v. Hernandez*, 313 F.3d 1206, 1209 (9th Cir. 2002).

> A sender of a package "retains a limited possessory interest in the mailed item," and a parcel's addressee "has a reasonable expectation that the mail will not be detained by postal employees beyond the normal delivery date and time." Generally, however, "a third party who is neither the sender nor the addressee of a mailed package does not share this privacy interest."

*United States v. Notyce*, No. CR 16-00556 JMS, 2017 WL 5137584, at *4 (D. Haw. Nov. 6, 2017) (quoting *Hernandez*, 313 F.3d at 1209-10 (9th Cir. 2002); *United States v. Sheldon*, 351 F. Supp. 2d 1040, 1043 (D. Haw. 2004)); *see also United States v. Pierce*, 959 F.2d 1297, 1303 (5th Cir. 1992).

## B. Preliminary Showing Needed for a *Franks* Hearing Regarding Omissions in a Search Warrant Affidavit

There is a presumption of validity with respect to the affidavit supporting a search warrant. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Thus, a defendant may challenge the validity of an otherwise facially valid affidavit only by making a substantial preliminary showing that a false statement was included in the warrant affidavit knowingly and intentionally or with reckless disregard for the truth. *Franks*, 438 U.S. at 155-56. The Ninth Circuit has held that reckless omissions that tend to mislead are also challengeable. *United States v. Stanert*, 762 F. 2d 775, 781 (9th Cir. 1985); *United States v. Dozier*, 844 F. 2d 701 (9th Cir. 1988); s*ee United States v. Gonzalez*, 437 F. 3d 854 (9th Cir. 2006), amended by 437 F.3d 854 (upholding lower court's *Franks* hearing based on a substantial preliminary showing that an affidavit contained material misrepresentations and omissions).

The attack must be more than conclusory and there must be allegations of deliberate falsehood or reckless disregard for the truth. *Franks*, 438 U.S. at 171; *United States v. Miller*, 753 F.2d 1475 (9th Cir. 1985) (holding that the defendant failed to establish that federal agent exhibited a reckless disregard for the truth in their search warrant affidavit when it alleged that the agent failed to check the criminal background of the informant—such allegations amount to no more than negligence).

If those omissions, when added to the affidavit, negate probable cause, the court must then hold an evidentiary hearing where the defense must show by a preponderance of the evidence that the statements were knowingly or recklessly omitted. *See Franks*, 438 U.S. at 156, 171-7; *United States v. Ippolito*, 774 F.2d 1482 (9th Cir. 1985) (stating that the statements or omissions must be material before a warrant is invalidated); *United States v. Strifler*, 851 F. 2d

1197 (9th Cir. 1988) (holding that the search warrant was supported by probable cause even with the correction of misstatements and omissions and thus defendant was not entitled to a hearing); *United States v. Burnes*, 816 F.2d 1354, 1357 (9th Cir. 1987) (the rule of materiality also applies to alleged omissions of facts from the affidavit).

## IV. DISCUSSION

For the following reasons, the Court finds that (1) Martin-Lara does not have standing to challenge the search warrants for the parcels, (2) Martin-Lara has not made a preliminary showing necessary to warrant a *Franks* hearing, and (3) even including the omitted information, the search warrant of the residence established probable cause to justify its issuance.

### A. Martin-Lara Does Not Have Standing to Challenge the Parcel Search Warrants but Does Have Standing to Challenge the Search of 5511 Windflower Unit A.

Martin-Lara has standing to challenge search warrant 3:20-MJ-000451-MMS authorizing the search of 5511 Windflower Unit A, as this is Martin-Lara's residence. However, because Martin-Lara was neither the named recipient nor sender of the subject parcels in search warrants 3:20-JM-00209-DMS, 3:20-MJ-00447-MMS, and 3:20-MJ-00475-MMS, he does not have standing to challenge those parcel warrants.

As mentioned *supra*, the first intercepted parcel indicated it was sent from "Lamuri Iury, 909 Chugach way spc. 36 Anchorage" and addressed to "Rafa Bray 10250 S Suncrest Dr Tucson AZ 85756" (Dkt. 92 at 3-4). The second intercepted parcel indicated it was sent from "Abel Flores 626 W Callee Santa Maria Tucson AZ 85706" and addressed to "Tim Smith 6600 Weimer dr apt 6 anchorage Alaska 99502" (Dkt. 92 at 5). The third intercepted parcel indicated it was sent from "Anthony Carrion 147 Calle de San Jose, San Juan, PR 00901" and addressed to "Jonathan Kendricks 1020 pine st. Unit A, anchorage, Alaska 99508" (Dkt. 92 at 6). While the

addressee has a sufficient privacy interest in a parcel and the sender retains a limited possessory interest in a parcel, Martin-Lara is not listed as either sender or recipient on any of the three parcels. *See Hernandez*, 313 F.3d at 1209; *Notyce*, 2017 WL 5137584 at *4.

Martin-Lara has also failed to assert that he was the intended recipient of the parcels. In *Pierce*, the Fifth Circuit indicated that an intended recipient, though not named as the addressee of a parcel, might nonetheless have an expectation of privacy in a parcel. 959 F.2d at 1303. However, the court dismissed the defendant's claims that he was an intended recipient when the parcel was delivered to someone else. *Id.* Here, Martin-Lara does not assert that he received any of the parcels in question. Further, the record establishes that the second parcel was received by Adera Leonard (Dkt. 92 at 7). Therefore, Martin-Lara does not have standing to challenge the parcel warrants; he failed to establish that he was the sender, addressee, or the intended recipient of the parcels.

**B. Martin-Lara Has Not Made a Preliminary Showing Necessary for a *Franks* Hearing; the Warrant Affidavit Contains Sufficient Probable Cause Even with the Inclusion of the Alleged Omissions.**

Martin-Lara asserts that the following information was omitted from the affidavit accompanying the warrant application to search 5511 Windflower Unit A:

> 1. Postal Inspector Kevin Horne omitted the fact that Ms. Adera Leonard upon arriving at 5511 Windflower Circle, Anchorage, AK, exited her vehicle with a small purse and accessed the driver's side of a black GMC pickup truck, before walking inside [the residence].
> 2. Postal Inspector Kevin Horne omitted the fact that neither MOISES MARTIN-LARA nor anyone else was observed to exit the house with anything including the parcel.
> 3. Postal Inspector Kevin Horne omitted the fact that the electronic monitoring device emitting a break tone, indicating that the subject parcel had been open, went off while MOISES MARTIN-LARA and Kenyon Jackson were outside the house and in a white Ford Fusion vehicle driven by Jackson.

4. Postal Inspector Kevin Horne omitted the fact that the subject parcel was thrown out of a moving car (the white ford fusion) and was observed on the ground near a trooper's vehicle.

5. Postal Inspector Kevin Horne omitted the fact that MOISES MARTIN-LARA was seized and detained from a car (the white ford fusion) that was northbound on Windflower Circle (being driven by Kenyon Jackson) when Agents and Troopers blocked the vehicle in.

6. Postal Inspector Kevin Horne omitted the fact that the MOISES MARTIN-LARA was transported back to 5511 Windflower Circle after being seized from Jackson's vehicle that was driving north bound on Windflower Circle before being boxed by law enforce agents and taken back to his 5511 Windflower Circle where he was interrogated in the garage.

Martin-Lara asserts that omissions 1-3 could have led the magistrate judge to believe that the parcel never entered Windflower Unit A by lending support to the following contentions: (1) that Leonard stopped and stashed the parcel in the driver's side door of a nearby pickup before entering the residence, (2) that Jackson and Martin-Lara did not have the parcel when they left the residence, and (3) that the parcel was not opened until after Martin-Lara and Jackson exited the residence and were driving away in the Ford. However, the affidavit notes that law enforcement found the outside packaging of the parcel **inside the residence** during a safety sweep. Further, the inner packaging, including the sham narcotics, were found outside the Ford, not the pickup truck. Even including these omissions, the affidavit provides ample evidence suggesting the parcel was brought inside 5511 Windflower Unit A and that there were other drugs inside. The affidavit also includes Martin-Lara's admission that there was heroin in his residence, 5511 Windflower Unit A.

Martin-Lara asserts that omissions 4-6 diminish the connection between the alleged controlled substances operation and Martin-Lara or his residence, therefore reducing law enforcement's probable cause to believe that evidence, fruits, or instrumentalities of such an illegal operation would be found in the residence. He points to (1) the fact that the Ford did not

stay parked outside the residence, but instead was driving away when law enforcement surrounded the vehicle, (2) that the sham narcotics were thrown out of the Ford, (3) that it was Jackson who was driving the Ford at the time it was pulled over, not Martin-Lara, and (4) that Martin-Lara was brought back to the residence for questioning. As mentioned *supra*, the affidavit states that the outer packaging of the parcel was found inside 5511 Windflower Unit A and Martin-Lara told law enforcement that there was heroin there. Further, the affidavit demonstrates that 5511 Windflower Unit A was the location of the exchange of the parcel from Leonard to Martin-Lara and Jackson, and that Martin-Lara and Jackson were in the vehicle next to where the parcel's contents were found. Even when the omissions identified by Martin-Lara are added, the affidavit continues to provide ample probable cause that there was evidence of drug offenses in 5511 Windflower Unit A.

A *Franks* hearing to determine whether Horne intentionally or recklessly omitted the information identified by Martin-Lara is not necessary because even with their inclusion the affidavit continues to provide probable cause that 5511 Windflower Unit A contained evidence of drug offenses under 21 U.S.C. § 846, 841, 843(b), and 18 U.S.C. § 1956. Therefore, search warrant 3:20-MJ-000451-MMS is not rendered invalid because of those omissions, and the fruits of that search should not be suppressed.

## V. CONCLUSION

For the foregoing reasons, the Court recommends that the District Court **DENY** Martin-Lara's motion to suppress and motion for *Franks* hearing at Docket 82.

DATED this 29th day of June, 2021 at Anchorage, Alaska.

*/s/Deborah M. Smith*
CHIEF U.S. MAGISTRATE JUDGE

*United States v. Martin-Lara*
3:20-cr-00080-SLG-DMS
R&R re Mtn to Suppress and for *Franks* hearing                                                                                                        11